John A. Marlin v. Commissioner.
Marlin v. Commissioner
Docket No. 5798-68.
United States Tax Court
T.C. Memo 1970-309; 1970 Tax Ct. Memo LEXIS 51; 29 T.C.M. (CCH) 1425; T.C.M. (RIA) 70309; November 9, 1970, Filed Glendale O. Scott, for the petitioner. John J. Weiler, for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $452.09 in petitioner's income tax for the calendar year 1965. The deficiency arises out of a disallowance of $2,317.55 claimed as expenses incurred in the trade or business of being an author. The primary issue is whether petitioner was in the trade or business of being an author and therefore entitled to deduct expenses alleged to have been paid or incurred in carrying on that trade or business under section 162(a). [1]
Findings of Fact A very short stipulation *52 was filed by the parties covering certain formal facts such as that petitioner is an individual, that one of his mailing addresses during 1965 was 1526 Connecticut Avenue, N.W. in this city, that he filed a 1965 income tax return (attached as an exhibit), that a deficiency was determined by respondent and why. Petitioner resided in Washington, D.C. at the time the petition herein was filed. He filed his Federal income tax return for the calendar year 1965 with the district director of internal revenue in Baltimore, Maryland. Petitioner attended Harvard University from 1958 until his graduation with the degree of Bachelor of Arts in 1962, majoring in history and modern European languages. He received the degrees of Bachelor of Arts and Master of Arts from Oxford University in 1964. In April of 1965 petitioner began his graduate studies in the field of economics at the George Washington University as a candidate for the degree of Doctor of Philosophy. In 1965 he passed his examination in one of the language requirements (French) and in 1966 in the other language requirement (Russian). In December, 1967, he passed the required general examination. As his final examination he was publicly *53 questioned in May, 1968, on his doctoral dissertation "Financial Institutions and Economic Growth in South Africa, 1956-1966." Petitioner was a full-time employee of the Federal Reserve Board from 1964 to 1966, in the capacity of "African Specialist." In his return for 1965 petitioner deducted $800 as expenses for education in connection with "Graduate Courses in Economics" at American University and George Washington University. He stated that these courses were taken in order to retain his employment, salary or status and to substantiate this he attached a letter from an official of the Federal Reserve Board that these studies "greatly aided him in his work at the Board and can be considered a part of his professional training and development." From 1966 to at least May 10, 1968, petitioner held successive posts as a Financial Economist with the Small Business Administration and the Federal Deposit Insurance Corporation. In 1965, petitioner received wages of $380 from Catholic University. From 1967 to at least May 10, 1968, petitioner was an Assistant Professorial Lecturer in Business Administration at George Washington University. In 1959 and 1960, petitioner was employed *54 as a reporter and, to a lesser extent as a photographer by the Harvard University News. From 1961 to the date of trial, petitioner, acting for "a publisher with the name of Trave-books, which was a subsidiary of Monarch Press in New York" has overseen the writing of five or six books. The record does not show the nature of his connection with Trava-books or the amount, if any, of remuneration received therefor. He also wrote for student papers while at Harvard and Oxford. In 1963, petitioner received $7.00 from the "Oxford Mail" for an article on the European Free Trade Association. In 1966, articles written by petitioner were published in Federal Reserve Notes, a staff publication of the Federal Reserve Board, and in the March issue of American Economic Review, the latter article being a book review. In 1967 an article written by him was published in the Annual * Journal of the Commerce Council, University of Witwatersrand, Johannesburg, South Africa. In 1969 three articles written by petitioner were published. Petitioner received no income *55 in 1965 as an author, and the only income shown by the record to have been received by him as an author in prior years was the $7.00 received by him in 1963 from the "Oxford Mail." 1427 Petitioner received a $2,500 advance in July of 1969 for "a book on finance." Petitioner had completed a book on financial institutions in black Africa at some time prior to the trial herein and as of that time expected that it would be published at some time in the future by a publisher and under terms not shown by the record. On April 27, 1965, petitioner sent the following memorandum to an Adviser in the Division of International Finance of the Federal Reserve Board on the subject "Proposed Itinerary of Field Trip to Africa, July 23 to September 19": Purpose of Travel: The field trip will be undertaken to meet people in Africa through whom the Federal Reserve Board can establish access to additional sources of information regarding (1) developments in African central banking, (2) the relations of African control banks and finance ministries with their former metropolitan counterparts, (3) relations between national central banks within the currency unions, (4) the economic effects of *56 past U.S. and international aid projects, (5) the likely effects of proposed aid projects, (6) the impact of measures taken to cut back the flow of U.S. bank lending abroad, and (7) the general economic position in each country. Benefits: Information obtained during and as a result of the trip will make possible a major work for the Federal Reserve Board on "Central Banking in Africa." A number of shorter papers will be prepared on subjects growing out of this topic: on development policy and needs, aid from the United States and international institutions, and the balance of payments position in the African countries. This information will aid the Federal Reserve Board in evaluating proposed aid projects for African countries in following the operations of African central banks, and in making a general assessment of developments which might affect U.S. financial policies regarding Africa. To be Visited: (1) Officials of central banks, ministries of finance and other local civil servants concerned with monetary policy; (2) members of U.S. Embassies and A.I.D. missions; (3) members of the missions of international institutions; (4) commercial banks and private business; (5) teachers *57 and students; and (6) newspaperment. PROPOSED ITINERARY Subject to Flight Confirmation July 23-26 - Leave Washington Friday evening. OWN TIME: Saturday, Sunday in London and Oxford. END OWN TIME. Monday, visits in London. One day $19. July 26-28 - Monday evening, leave for Paris. Tuesday and Wednesday, visits in Paris. Two days $40. July 28-29 - Leave for Cairo Wednesday evening. OWN TIME: In Cairo Thursday. END OWN TIME. July 29-Aug. 2 - Leave Cairo Thursday evening. In Addis Friday, Saturday, Sunday, Monday. Four days $52. Aug. 2-5 - Leave Addis Monday evening. OWN TIME: In Nairobi Tuesday, Wednesday. END OWN TIME. Visits in Nairobi Thursday. One day $16. Aug. 5-9 - Leave Thursday evening for Lusaka. Friday, visits in Lusaka. OWN TIME: Saturday, Sunday. END OWN TIME. Monday, visits in Lusaka. Two day $28. Aug. 9-10 - Leave Lusaka Monday evening for Salisbury. Tuesday, Wednesday in Salisbury. Two days $28. Aug. 10-17 - Leave Salisbury Wednesday evening for Joburg. Thursday, Friday, Saturday, Sunday in Joburg. Monday, Tuesday in Pretoria. Wednesday in Joburg. Seven days $94. August 17-19 - Leave Wednesday evening for Leopoldville, Thursday, Friday in Leopoldville *58 and possibly Brazzaville (short ferry crossing). Two days $22. Aug. 19-24 - Leave Leopoldville Friday evening for Lagos. Saturday, Sunday, Monday, Tuesday in Lagos. Four days $88. Aug. 24-26 - Leave Lagos Tuesday evening for Accra. Wednesday, Thursday, in Acca. Two days $48. Aug. 26-30 - Leave Accra Thursday evening for Abidjan. Friday, Saturday, Sunday, Monday in Abidjan. Four days $92. Aug. 30-Sept. 1 - Leave Abidjan Monday evening for Monrovia. Tuesday, Wednesday in Monrovia. Two days $58. Sept. 1-14 - Leave Wednesday evening for Algiers. OWN TIME: Thursday, Friday in Algiers. Leave Algiers Wednesday evening for Rome. In Rome Saturday. Leave Rome Sunday morning for Stresa for Mont Pelerin Conference. Return to Rome Saturday morning Sept. 11. Leave Rome Saturday evening. Sunday, Monday in Paris. END OWN TIME. Visits in Paris Tuesday. One day $20. Sept. 14-19 - Leave Paris for London Tuesday evening. Visits in London 1428 Wednesday, Thursday. OWN TIME: Friday, Saturday, Sunday. END OWN TIME. Two days $38. Sept. 20 - Monday morning, at work 8:45. TOTAL 36 days $653. [2]
*59 Petitioner left for Africa on July 23 and returned September 19. He incurred unenumerated expenses of $884.45 in connection with this trip. On December 11, 1965, petitioner wrote the following letter to "Director, African Department, Frederick A. Praeger, Publisher" of New York: I am writing to enquire whether you might be interested in publishing a book on banking in Africa. This past summer I traveled in Africa gathering information on African banking (see attached itinerary), as part of my work as the African specialist at the Federal Reserve Board. During my research work it was impressed on me that there is no published book comparing African banks and central banks, and that there is a demand for such a book. Writing a book of this kind would be a difficult job anywhere, but I think I am ideally placed for it, since the Federal Reserve Board must approve applications of any banks in the United States that wish to operate abroad. All Embassy reports on banking and related matters are sent here (where I read them). My academic grounding in African studies was obtained at Harvard, Oxford, and the George Washington University, where I am pursuing a doctoral program. I *60 am also currently a part-time lecturer on African Affairs at the Catholic University of America. Between Christmas and the New Year I will be in New York for the annual meeting of the American Economic Association, and would like to call on you during that period. During 1965 petitioner incurred certain entertainment expenses in amounts and for purposes not made clear by the record. On his return for the year in question, petitioner also deducted the following items as ordinary and necessary expenses connected with his trade or business of being an author: Printing
$ 41.00
Material and Supplies
148.08
Typing
292.95
Prof. dues
45.00
Prof. books
51.70
Ultimate Finding of Fact Petitioner was not in the trade or business of being an author in 1965. Opinion KERN, Judge: Petitioner contends that during 1965, he was in the trade or business of being an author, and he is therefore entitled to deduct certain alleged expenses under section 162(a). [3]
*61 A business has been defined as "that which occupies the time, attention, and labor of men for the purpose of livelihood or profit." . It is well established that in order to be considered as engaged in a trade or business, the taxpayer must prove that he "entered into and carried on (the business in good faith and for the purpose of making a profit, or in the belief that a profit can be realized thereon." (C.A. D.C., 1933). While petitioner may be considered as a writer who has described events at Harvard and Oxford and has contributed to human knowledge by his scholarly essays in the field of Economics, petitioner has failed to prove that he was in the trade or business of being an author during the taxable year 1429 or at any time prior thereto. It is quite apparent that petitioner, during the year 1965 and the years prior thereto, did not carry on a business of writing for the purpose of profit. The record herein shows that petitioner had received only $7.00 for any writing by him prior to 1966. On the evidence presented to us we might speculate that the travel *62 expenses incident to petitioner's trip to Europe and Africa were incurred in furtherance of his career with the Federal Reserve Board or of his scholarly activities at three universities in the District of Columbia, but there is no foundation in the record for even a speculation that the expenses might have been incurred in carrying on a nonexistent trade or business of being an author; and the same reflections are apposite with regard to the entertainment and other expenses involved herein. We conclude that petitioner was not in the trade or business of being an author in 1965. Because of this finding, it is unnecessary for us to consider whether petitioner substantiated his expenses and whether any of these expenses were ordinary and necessary as that term is used in section 162. Decision will be entered for the respondent. Footnotes
1. Hereafter all section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
*. By official Tax Court order, dated 11-16-70 and signed by Judge Kern, "American" Journal was changed to "Annual" Journal. - CCH.↩
2. Petitioner received $650.00 from the Federal Reserve Board to cover his expenses for those days on which he was doing work for the Board.↩
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; (2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. For purposes of the preceding sentence, the place of residence of a Member of Congress (including any Delegate and Resident Commissioner) within the State, congressional district, Territory, or possession which he represents in Congress shall be considered his home, but amounts expended by such Members within each taxable year for living expenses shall not be deductible for income tax purposes in excess of $3,000.↩